THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RYAN WALDRON,<br><br>                Plaintiff,<br><br>    v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>                Defendant. | Case No. 3:24-cv-05193-TMC<br><br>**UNUM LIFE INSURANCE COMPANY OF AMERICA'S OPPOSITION TO PLAINTIFF'S MOTION AND CROSS-MOTION FOR JUDGMENT ON THE RECORD PURSUANT TO RULE 52** |

## I.     OVERVIEW

Unum respectfully requests that the Court deny Plaintiff's Rule 52 motion ("Plaintiff's Motion", Dkt. 15) and instead, pursuant to Rule 52, enter judgment in favor of Unum based on the Administrative Record. Unum is entitled to judgment because plaintiff Ryan Waldron ("Plaintiff") cannot meet his burden of proving that he qualifies for long-term disability ("LTD") benefits pursuant to Group Policy No. 414909 (the "Policy"), which was issued by Unum to Plaintiff's employer.

Plaintiff believes that he is disabled due to his body's reaction to a COVID vaccine. However, the medical providers that treated him during the relevant time period, including his primary care provider ("PCP"), disagree. Accordingly, Plaintiff cannot meet his burden of proof,

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 1
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

and the Court should enter judgment in Unum's favor.[1]

## II.     FACTS

### A.     Relevant Policy Language

The Policy provides that a claimant is disabled when "you are **limited**[2] from performing the **material and substantial duties**[3] of your **regular occupation**[4] due to your **sickness**[5] or **injury**[6]…". AR118. In order to be eligible for benefits, a claimant "must be continuously disabled through your **elimination period**[7]," which is the later of "180 days; or the date your insured Short Term Disability payment end, if applicable." *Id.* Here, Plaintiff's **elimination period** ran from May 2021 (the month during which he allegedly became disabled)[8] until November 9, 2021, which is the date on which his short-term disability ("STD") payments ended. *See* AR717.

The Policy required Plaintiff to submit proof of his claim in order to qualify for LTD benefits. In relevant part, the proof of claim requirement states:

> Proof of your claim, provided at your expense, must show:
> - the date you disability began;
> - the existence and cause of your sickness or injury;
> - that your sickness or injury causes you to have limitations on your functioning

---

[1] Unum filed the Administrative Record ("AR") under seal. *See* Dkt. 14. Unless otherwise specified, all citations in this brief are to the LTD Claim File portion of the AR, which is numbered with the Bates prefix UA-CL-LTD.

[2] Bolded terms in the body of this brief are defined by the Policy, and are used in accordance with the definitions provided therein. **Limited** means "what you cannot or are unable to do." AR133.

[3] **Material and substantial duties** are duties that "are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." AR134.

[4] **Regular occupation** means "the occupation you are routinely performing when your disability begins." AR135.

[5] **Sickness** means "an illness or disease. Disability must begin while you are covered under the plan." *Id.*

[6] **Injury** means "a bodily injury that is the direct result of an accident and not related to any other cause." AR 133.

[7] **Elimination period** means "a period of disability which must be satisfied before you are eligible to receive benefits from Unum." AR132.

[8] *See* Dkt. 15 at 2.

UNUM'S RULE 52 OPPOSITION AND CROSS-
MOTION - 2
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

and restrictions on your activities preventing you from performing the material and substantial duties of your regular occupation…

AR109.

The Policy further states that eligibility for benefits will end "during the first 24 months of payments, when you are able to work in your regular occupation on a **part-time basis** and you do not." AR124. **Part-time basis** means "the ability to work and earn between 20% and 80% of your indexed monthly earnings. AR134

Thus, in order to qualify for LTD benefits, Plaintiff is required to show: 1) the existence and cause of his **sickness**; and 2) that his **sickness** caused him to have functional limitations and activity restrictions that prevented him from performing the normal requirements of his occupation from at least May 2021 through November 9, 2021; and 3) that he was unable to earn a minimum of 20% of his prior income from November 2021 through November 2023.

**B.    Plaintiff's Initial LTD Claim**

   **1.    Plaintiff reports symptoms following his COVID vaccination.**

Plaintiff received a COVID vaccine on May 2, 2021. *See* AR412. On May 8, 2021, he reported experiencing nonacute abdominal pain to the Tumwater Family Practice Clinic ("TFPC"). *See* AR1911. At or about this time, Plaintiff stopped working. *See* Dkt. 15 at 6. On May 19, 2021, Plaintiff visited his primary care provider ("PCP") Paul Surette, MS, PA-C, at the TFPC. *See* AR412. Plaintiff told Mr. Surette that he developed discomfort in both arms following the vaccination, which was later followed by mental fog, incoordination, weakness, numbness and tingling in his extremities. *Id.* On May 27, 2021, Plaintiff reported to neurologist Dr. Greg Zoltani that he had fainted when he received the COVID vaccination, that the only vaccines he had received previously were for HPV and meningitis, and that he had not returned to work following the COVID vaccination. *See* AR328. He also reported the new symptoms of headache and eye pain. *Id.*

During his next visit to the TFPC on June 11, 2021, Plaintiff reported the additional symptoms of dizziness, shortness of breath, and double vision. *See* AR407. At a second visit with

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 3
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Dr. Zoltani on June 9, 2021, he reported a "pressure sensation in the head which seems to be worse after he eats." *See* AR320. At a July 13, 2021, telemedicine appointment with Dr. Christopher McMullen, a physical medicine and rehabilitation specialist, Plaintiff reported that he was having difficulty sleeping. *See* AR385.

### 2. Plaintiff receives treatment from his PCP.

Initially, most of the treatment for Plaintiff's symptoms was provided by his PCP Paul Surette, along with Mr. Mr. Surette's colleagues Jennifer Casler, PA-C and Calvin Kuo, PA-C. They had approximately 15 encounters with Plaintiff between May 2021 and January 2022. *See* AR 1903-4. They examined Plaintiff on multiple occasions and ordered numerous tests (including blood tests (AR413), MRIs (AR407), EKGs (AR408), and x-rays (AR408)), none of which revealed the cause of his symptoms. They also prescribed various medications, but by January 2022 Mr. Waldron reported that "he is not entirely certain that the medications are doing really much of anything at all to help him." AR3037. Mr. Surette also counseled Plaintiff to avoid unproven treatments:

> He is looking into other treatment options. [Is] using company called Health Rising, who is suggesting treatment with Maraviroc, statins and Ivermectin…I am concerned over his possible use of unproven treatments including antiretroviral medications and anti-helminth agents with questionable data to support sue. We discussed that there are black box warnings on Maraviroc for hepatotoxicity and I do not recommend using ivermectin.

AR3037-38. Plaintiff stopped treating with Mr. Surrette and the other medical providers at the TFPC at some point after Mr. Surrette certified that Plaintiff was able to return to work as discussed further below.

### 3. Plaintiff's PCP refers him to specialists.

Mr. Surette referred Plaintiff to multiple specialists to perform further testing. Dr. Zoltani, a neurologist, examined Plaintiff on May 27, 2021 and June 9, 2021. *See* AR328, AR320. Dr. Zoltani's assessment was "symptom complex of unclear etiology." *See* AR320. He did not have any recommended treatments, but reassured Mr. Waldron that "he should continue to improve over further time and he should resume his normal levels of activity." *Id.*

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 4
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Dr. Britta Denman, an infectious disease specialist, examined Plaintiff on July 1, 2021, and conducted additional tests. *See* AR447. Dr. Denman ordered blood tests, and noted the possibility of an immunology referral and neuropsychological testing. *See* AR458.

Dr. Christopher McMullen had telemedicine visits with Plaintiff on July 13, 2021, and September 9, 2021. *See* AR385, AR388. Among other things, Dr. McMullen reported that, "Many of his symptoms now could be related to depressive disorder and lack of sleep." AR390. Dr. McMullen prescribed medications for headache, depression, and sleep, and referred Plaintiff to a physical therapist, a sleep clinic and a headache clinic. *Id*.

Beginning on July 28, 2021, Plaintiff participated in physical therapy with Denise Gentzler, PT, and other providers at Providence Tumwater Valley Physical Therapy. *See* AR605.

Dr. Charles Rossow, a cardiologist, performed examinations and testing of Plaintiff on August 5, 2021 and October 25, 2021. *See* AR248 and AR241. The test results and images were unremarkable. *See* AR244. Dr. Rossow noted that Plaintiff's symptoms were improving with medication, and recommended ongoing physical therapy. *See* AR248-49.

Dr. Natalia Murinova, a neurologist at UW Medicine's Headache Clinic, examined Plaintiff on January 6, 2022, after the **elimination period** had expired. *See* AR504. Plaintiff reported to Dr. Murinova that he "feels not only severe disabling pain, but is also unable to function due to headaches." *See* AR508. Dr. Murinova prescribed medications and other headache treatments. *See* AR509-510.

### 4. Plaintiff self-refers to additional providers.

Despite the lack of evidence regarding the cause of his symptoms, the medical records indicate that "Mom and [Mr. Waldron] definitely believe it is from the vaccine." *See* AR407. Possibly in accordance with this belief, Plaintiff initially sought treatment with his allergist, Dr. Kanthawatana. *See* AR412. Plaintiff then visited Dr. Mary Ferris, an optometrist, on June 15, 2021. *See* AR3217. Dr. Ferris reported as follows: "Discussed no neurological or vascular findings to align with symptoms. No papilledema, no oculomotor or binocular dysfunction, diplopia could not be created in exam room." *Id.*

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 5
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 Pike Street; Suite 2375
Seattle, Washington 98101
Phone: 206.682.1550

Next, Plaintiff participated in telemedicine visits on July 2, 2021, and September 30, 2021, with Dr. Melanie Swift, an occupational medicine specialist at the Mayo Clinic. *See* AR282 and AR278. Dr. Swift recommended further testing, and also recommended that Plaintiff begin "engaging in regular activity that does not cause a prolonged flare of fatigue" and "encouraged resumption of a normal daily schedule as possible." AR284. She did not provide any work restrictions herself, and instead recommended that he "consult with his local treating provider" regarding work restrictions. *Id.* Dr. Swift also noted that "his care plan and rehab are appropriate, and his prognosis is excellent for continued recovery." AR280.

Plaintiff also self-referred to a company called Innovative Bioanalysis. *See* AR500. Innovative Bioanalysis performed a test for SARS-CoV-2 Neutralization Antibody, but noted that the test "has not been FDA cleared or approved." AR500. As noted above by his PCP, Plaintiff also reported interest in pursuing unproven treatments with a company called Health Rising. *See* AR3037-38.

### 5.   Unum reviews Plaintiff's claim for LTD benefits.

Plaintiff was approved for STD benefits, which he ultimately received through November 9, 2021. *See* AR717. As noted above, in July 2021 Dr. Swift recommend that Plaintiff consult with PCP regarding work restrictions. *See* AR284. There is no indication that he did so until he applied for LTD benefits in December 2021. At that time, Plaintiff provided Unum with a disability certification from Mr. Surette dated December 1, 2021. *See* AR95. That form stated, "Shortness of breath and fatigue limit even minimal activities of daily living. Also has blurred vision that limits reading/computer work along with headache." *Id.* At that time, Mr. Surette could not provide a return to work date for Plaintiff. *Id.*

Joshi Vikrant, MBBS, first reviewed the available information on behalf of Unum. *See* AR522. Because Ms. Vikrant found that the records failed to establish that Plaintiff was **limited** from performing the **material and substantial duties** of his **regular occupation**, Unum sought a second opinion from Dr. Miribelle Kim, D.O., Board Certified Internal Medicine. *See* AR694.

As part of her review, Dr. Kim attempted to contact Dr. Murinova and Mr. Surette to

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 6
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

discuss any functional restrictions or limitations caused by Plaintiff's symptoms. Dr. Kim sent letters to Dr. Murinova and Mr. Surette explaining that she had tried to contact them by telephone on February 8, 2022. *See* AR668 and AR688. The letters summarized the medical records, and communicated Dr. Kim's opinion that:

> Records overall indicate that his reported symptoms are inconsistent with and out of proportion to his extensive diagnostics, exam finding by multiple providers, as well as the initial insult (COVID vaccine on 5/2/21 with negative COVID testing prior to and after vaccination). His noted treatment plan of medications, continued follow-up with headache clinic, Physical Therapy, possible sleep study and periodic follow-up appts with his PCP can typically be provided concurrently while performing his noted light demand level occupation duties (see below) full-time.

AR669 and AR 689. The letters then asked the following question:

> Are you in agreement that the medical evidence does not support that Ryan Waldron was/is precluded from 10/25/21 forward from performing sustained full-time (forty hours per week) activities which include: Exerting up to 20 lbs occasionally; frequent sitting; occasional walking, standing, reaching, handling, fingering, keyboard use, Mental/cognitive demands include: directing, controlling or planning activities for others; influencing people in their options, attitudes and judgments; performing a variety of duties; attaining precise set limits, tolerances and standards; dealing with people; making judgments and decisions.

*Id.* Following that statement, the letters included space for Dr. Murinova and Mr. Surette to indicate "YES" or "NO." *Id.*

In the event Dr. Murinova or Mr. Surette disagreed with her opinion, Dr. Kim requested that they "please explain in detail the medical rationale/evidence for your opinion, including diagnostic testing, physical exam findings, treatment plan and prognosis/schedule for a return to full-time work capacity as noted above." *Id.* These letter make it clear that Unum gave Plaintiff every opportunity to provide medical evidence supporting any restrictions or limitations that impacted his ability to work during the **elimination period**.

Dr. Murinova did not respond to the letter or phone call. However, on February 20, 2022, Mr. Surette checked the box for "YES", indicating his agreement that the medical evidence did not support that Plaintiff was precluding from working as of October 25, 2021 and going forward.

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 7
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

*See* AR689.[9]

On February 22, 2022, Dr. Kim again reviewed the available information and then concluded that, "To a reasonable degree of medical certainty, the medical evidence does not support that the insured was/is precluded from 10/25/21 forward from performing the above noted occupational duties full-time." AR698.

Despite that fact that Plaintiff's PCP had confirmed his ability to return to work, Unum obtained another medical review before making its LTD benefit determination. In a February 24, 2022 report, Dr. Zachary Gross, Board Certified Internal Medicine, reached the same conclusions as Mr. Surette and Dr. Kim, concluding that "there are no clinical findings present in the available records to support the restrictions and limitations opined by the AP[10]…I concur with [Dr. Kim's] opinion that there is no evidence to support the clamant is precluded from the outlined occupation demands." AR705.

The information available to Unum at this time demonstrated that although Plaintiff reportedly experienced symptoms, none of his numerous treating providers believed that his symptoms prevented him from working. To the contrary, Plaintiff's PCP and Unum's medical consultants all agreed that his symptoms did not preclude a return to work. Based on all of the available evidence, Unum declined Plaintiff's claim for LTD benefits by letter dated February 28, 2022 because the record failed to establish that Plaintiff was unable to perform the **material duties** of his **regular occupation** during the **elimination period**. *See* AR717.

**C.    Plaintiff's Appeals**

    **1.    Plaintiff submits his first appeal.**

Mr. Waldron appealed Unum's decision by letter dated August 22, 2022. *See* AR833. The

---

[9] Plaintiff inaccurately characterizes this letter as indicating only that Mr. Surette agreed "that the ***diagnostic testing*** did not support Waldron's disability from October 25, 2021 forward." Dkt. 15 at 13 (emphasis added). This mischaracterization substitutes the narrow term "diagnostic testing" for the broad term that was actually used – "medical evidence." AR689. The letter also makes clear that medical evidence is not limited to diagnostic testing, but also includes physical exam findings, treatments and prognoses. *Id.*

[10] The is a reference to Dr. Murinova's statement that "the patient feels not only severe disabling pain, but is also unable to funding due to headaches." AR704.

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 8
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

appeal letter advised that Mr. Waldron had pursued non-traditional therapies including IV hydration, PEMF therapy, float therapy, hyperbaric chamber, IV Ozone treatment, and supportive oligonucleotide technique. and that he had also tested positive for Lyme, viral infections, and molds. *See* AR834. Mr. Waldron reported that he was seeking treatment from Dr. Daniel Hanson (a neurologist), a different neurologist in Utah, Neuro-Wave Brain Performance Center, an infectious disease doctor, and a neuropsychiatrist. *Id.* In support of his appeal, Mr. Waldron submitted disability certifications from Dr. David Palacios, a naturopathic physician, and Dr. Glen Zielinski, a neurologist. *See* AR 941-42. Notably, these doctors certified that Mr. Waldron was unable to work as of May 2, 2022, rather than during the **elimination period** that ended on November 9, 2021. *Id.* Mr. Waldron withdrew his first appeal on August 31, 2022. *See* AR1018.

      **2.**      **Plaintiff submits his second appeal.**

Mr. Waldron retained legal counsel, who submitted a second appeal on his behalf by letter dated February 27, 2023. *See* AR1043. The second appeal was supported by the opinions of four medical providers who Mr. Waldron consulted beginning in April 2022, approximately five months after the **elimination period** expired. Although each of Mr. Waldron's new medical providers opined that Mr. Waldron was unable to work at certain times beginning in May 2022, none of them opined (or had any basis to opine) that Mr. Waldron was unable to work during the **elimination period** that ended on November 9, 2021.

Dr. Palacios and Dr. Zielinski began treating Mr. Waldron on April 5, 2022. *See* AR 941-42. Again, these doctors explicitly certified that Mr. Waldron was disabled and unable to work *as of May 2, 2022. See* AR 941-42.

Dr. Megan Callahan performed a neuropsychological evaluation of Mr. Waldron on January 20, 2023. *See* AR3020. Dr. Callahan diagnosed Mr. Waldron with mild neurocognitive disorder and adjustment disorder with depressed mood. *See* AR3027. However, Dr. Callahan did not express any opinion regarding Mr. Waldron's ability to return to work and/or whether Mr. Waldron experienced a mild neurocognitive disorder prior to November 9, 2021.

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 9
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

In a one-paragraph letter to Mr. Waldron's legal counsel dated January 10, 2023, Dr. Steve Plaza, a naturopathic doctor, expressed his opinion that Mr. Waldron was unable to work. *See* AR3030. The letter expressed no opinion regarding Mr. Waldron's ability to work prior to November 9, 2021. *Id.*

In a letter to Mr. Waldron's legal counsel dated January 19, 2023, Scott Marsland, a nurse practitioner, stated that he had a telemedicine consultation with Mr. Waldron on December 29, 2022. *See* AR 3031. Based on that appointment, Mr. Marsland opined that Mr. Waldron was unable to work. *See* AR 3033. The letter expressed no opinion regarding Mr. Waldron's ability to work prior to November 9, 2021. *Id.*

### 3. Unum reviews Plaintiff's appeal.

On appeal, Unum obtained a third medical records review, which was performed by Dr. Steven Winkler, Board Certified Internal Medicine. *See* AR3559-67. Dr. Winkler's report concluded: "it is my medical opinion, within a reasonable degree of medical certainty, that the medical records do not document physical diagnostic, imagine or cognitive findings to preclude the insured from performing the occupation demands outlined above as of 10/25/2021." AR3567. Dr. Winkler's report correctly notes that any post-**elimination period** findings "have limited clinical relevance to the period under review." AR3566.

Significantly, none of Plaintiff's medical providers disputed Dr. Winkler's analysis and conclusions, despite having ample opportunity to do so. Unum provided Plaintiff's former counsel with Dr. Winkler's report on April 19, 2023. *See* AR3577. Plaintiff's counsel criticized Dr. Winkler's analysis (AR3581), but did not provide any rebuttal from plaintiff's medical providers.

### III.   Argument

**A.   Plaintiff Has the Burden of Proof.**

Ninth Circuit law is clear that, when a district court reviews an ERISA benefits decision

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 10
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

under a *de novo*[11] standard of review, the claimant retains the burden of proving his entitlement to benefits. *See Muniz v. Amec Constr. Mgmt., Inc.,* 623 F.3d 1290, 1294-95 (9th Cir. 2010); *Louis v. The Hartford Life and Accid. Ins. Co.*, Case No. 2:19-cv-00056-MJP, 2020 WL 39145 at *6 (W.D. Wash. Jan 3, 2020); *Baxter v. MBA Group Ins. Trust Health and Welfare Plan*, 958 F. Supp. 2d 1223, 1227 (W.D. Wash. 2013). To meet his burden, Plaintiff must prove not only that he has a medical diagnosis, but also that his medical conditions made him continuously unable to perform his job duties on a full-time basis during the **elimination period**. *See, e.g., Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).

Further, "[s]ubjective or conclusory opinions regarding a claimant's work functionality will not suffice to carry Plaintiff's burden of proof." *Louis*, 2020 WL 39145 at *8. "The Ninth Circuit has permitted plan administrators to 'seek information on how an impairment actually limited the claimant's functional capacity' through objective evidence." *Id.* (quoting *Ross v. Prudential Ins. Co. of Am.*, 304 Fed. Appx. 502, 503 (9th Cir. 2008)). "The claimant's 'subjective evidence is persuasive only to the extent it is corroborated by other evidence of medically documented impairments showing that she has functional limitations or restrictions that render her disabled from working.'" *Id.* (quoting *Perryman v. Provident Life and Accid. Ins. Co.*, 690 F. Supp. 2d 917, 93 (D. Ariz. 2010)). Ultimately, "the Court must examine whether the participant has established, by a preponderance of the evidence, that the record supports the conclusion that he is entitled to benefits under the policy." *Louis*, 2020 WL 39145, at *7.

**B.    Plaintiff Cannot Show That He Was Unable To Perform The Material Duties Of His Regular Occupation During The Elimination Period.**

Most LTD claims involve a battle of the experts, wherein courts weigh the opinions of the claimant's treating physicians against the opinions of the insurer's consulting physicians. This case is different. Instead of competing expert opinions, this case requires the Court to weigh

---

[11] For purposes of this matter only, and without admitting that any discretionary clauses in the Policy at issue are prohibited, Unum does not dispute that the *de novo* standard of review applies.

UNUM'S RULE 52 OPPOSITION AND CROSS-
MOTION - 11
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Plaintiff's subjective, non-professional opinion that he was disabled due to a COVID vaccine against the unanimous opinion of Plaintiff's own treating physicians and Unum's consulting doctors that he was not. Plaintiff has not and cannot cite a single case wherein a claimant's own opinion trumped the opinion of his own doctors. Given this record, Plaintiff has clearly not met his burden of proving disability by the preponderance of the evidence.

    **1.    None of the medical providers who worked with Plaintiff during the "elimination period" opined that he was disabled.**

In order to qualify for LTD benefits, Plaintiff must prove that he was continuously disabled during the **elimination period** of May 2021 to November 9, 2021. *See* AR118 and AR717. As discussed above, Plaintiff treated with at least the following providers during the **elimination period**: Mr. Surrette, Ms. Casler, Mr. Kuo, Dr. Zoltani, Dr. Denman, Dr. McMullen; Dr. Rossow, Dr. Ferris, Dr. Kanthawatana, Dr. Swift, Ms. Gentzler and other physical therapists, and Dr. Ferris. The Administrative Record documents over 30 encounters between Plaintiff and these providers during the **elimination period**, but contains no indication that any of them ever instructed Plaintiff to avoid work or opined that he was disabled during or after any of these appointments.

To the contrary, the medical records reflect that Plaintiff's treating providers repeatedly told him that his prognosis was good and encouraged him to resume normal activities. *See, e.g.* AR320 (Dr. Zoltani advised Plaintiff that "he should continue to improve over further time and he should resume his normal levels of activity"); AR284 (Dr. Swift recommended "engaging in regular activity that does not cause a prolonged flare of fatigue" and "encouraged resumption of a normal daily schedule as possible.")

The only reference to work restrictions during the **elimination period** appears to be Dr. Swift's July 7, 2021 recommendation that Plaintiff consult with his local treating regarding such restrictions. *See* AR284. There is no indication that Plaintiff followed that recommendation until after the **elimination period** had expired and Plaintiff was applying for LTD benefits.

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 12
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

**2. According to Plaintiff's PCP, the medical evidence failed to show that Plaintiff was unable to work.**

When he applied for LTD benefits, Plaintiff submitted a disability certification from his PCP (Mr. Surette) dated December 1, 2021. *See* AR95. Plaintiff also requested that Dr. McMullen certify that he was disabled, but Dr. McCullen declined. *See* AR1189. It is unknown whether Plaintiff requested that any of his other treating providers certify that he was disabled, but, in any event, the only certification Plaintiff submitted was Mr. Surette's.

But Mr. Surette withdrew his initial certification after further consideration. On February 20, 2022, Mr. Surette signed a statement confirming his "agreement that the ***medical evidence*** does not support that Ryan Waldron was/is precluded from 10/25/21 forward from performing sustained full-time (forty hours per week) activities." AR688 (emphasis added). Thus, Plaintiff's own PCP concurred with Unum's consultants Dr. Kim and Dr. Gross, who opined that the medical evidence failed to show that Plaintiff was unable to work during the **elimination period**.

Plaintiff's efforts to downplay his own PCP's opinion are unavailing. Plaintiff inaccurately characterizes Mr. Surette's signed statement as indicating only that Mr. Surette agreed "that the ***diagnostic testing*** did not support Waldron's disability from October 25, 2021 forward." Dkt. 15 at 13 (emphasis added). This mischaracterization substitutes the narrow term "diagnostic testing" for the broad term that was actually used – "medical evidence." AR689. Mr. Surette's letter also makes clear that medical evidence is not limited to diagnostic testing, but also includes physical exam findings, treatments and prognoses. *Id.* Telling, the foregoing is the only reference to Mr. Surette's opinion in Plaintiff's Motion. Plaintiff has not and cannot explain why the Court should not place substantial weight on the opinion of his PCP – who had the most contact with Plaintiff and the best opportunity to observe Plaintiff's condition during the **elimination** period- that Plaintiff's symptoms did not prevent him from working.[12]

There is simply no contemporaneous medical evidence supporting Plaintiff's belief that he was unable to work during the **elimination period** of May to November 2021. Although

---

[12] Indeed, Plaintiff's own appeal argued that, "Unum must give substantial weight to Mr. Waldron's treating physicians' opinions." AR1050.

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 13
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Plaintiff's self-reported symptoms are relevant, they do not outweigh the opinions of his treating physicians.

**C.   Evidence Regarding Plaintiff's Capabilities After The Elimination Period Had Expired Are Irrelevant.**

Plaintiff's appeal was based largely on the opinions provided by four doctors who treated him after the **elimination period** had ended. Although each of these doctors opined that Plaintiff was disabled, none of them opined that he was continuously disabled during the **elimination period** as necessary to qualify for benefits. These doctors were undoubtedly aware of Plaintiff's belief that he became disabled in May 2021 and that he was seeking LTD benefits. If they had any basis to certify that Plaintiff was continuously disabled during the **elimination period** they undoubtedly would have done so. But they did not.

Dr. Palacios and Dr. Zielinski began treating Mr. Waldron on April 5, 2022. *See* AR 941-42. They explicitly certified that Mr. Waldron was disabled and unable to work as of May 2, 2022. *Id.* It makes sense that Drs. Palacious and Zielinski did not opine on Plaintiff's ability to work before the **elimination period** expired on November 9, 2021, because they would have no basis to do so. Dr. Megan Callahan performed a neuropsychological evaluation of Mr. Waldron on January 20, 2023, and diagnosed him with mild neurocognitive disorder and adjustment disorder with depressed mood. *See* AR3027. However, she did not express any opinion regarding when Plaintiff's disorders began or whether the prevented him from working. By letter dated January 10, 2023, Dr. Plaza expressed his opinion that Plaintiff was unable to work on that date, but expressed no opinion regarding Plaintiff's ability to work before the **elimination period** expired on November 9, 2021. Again, that is unsurprising because Dr. Plaza would have no basis to opine regarding Plaintiff's capabilities during the **elimination period.** The same is true of Mr. Marsland, a nurse practitioner who had a telemedicine consultation with Mr. Waldron on December 29, 2022. *See* AR 3031.

The fact that these doctors considered Plaintiff to be disabled as of early 2023 in no way indicates that Plaintiff was continuously disabled between May 2021 and November 8, 2021.

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 14
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Indeed, "courts should give little weight to after-the-fact conclusory opinions that are contrary to the objective medical evidence in the record." *Louis*, 2020 WL 39145 at *8.

**D.   Plaintiff Has Not Met His Burden Of Proving That He Was Unable To Work On A "Part-Time Basis."**

The Policy states that eligibility for benefits will end "during the first 24 months of payments, when you are able to work in your regular occupation on a **part-time basis** and you do not." AR124. **Part-time basis** means "the ability to work and earn between 20% and 80% of your indexed monthly earnings. AR134. If Plaintiff had been eligible for LTD benefits, payments would have begun in November 2021, but would have ended immediately in the event Plaintiff was able to work on **part-time basis** but did not.

Here, there is simply no evidence in the Administrative Record that Plaintiff was unable to earn at least 20% of his prior earnings as of November 2021 and going forward. Rather, it appears that none of the providers who worked with Plaintiff during this period considered whether Plaintiff was able to work part-time, let alone rendered any opinions to that effect. Thus, Plaintiff has not met his burden of proving that he would qualify for ongoing LTD benefits after November 2021 even if had met his initial burden of proving that he was unable to perform the **material duties** of his **regular occupation** during the **elimination period**, which he has not.

**E.   Plaintiff's Arguments Are Unconvincing.**

Plaintiff's Motion offers three arguments in support of Plaintiff's claim, none of which withstand scrutiny

**1.   Plaintiff's "objective evidence" argument is a classic red herring.**

Plaintiff's first argument is that Unum improperly denied his claim based on a perceived lack of "objective evidence." *See* Dkt. 16 at 17-18. While admitting that Unum never actually demanded that Plaintiff provide "objective evidence" or stated that it was denying Plaintiff's claim due to a lack of "objective evidence," Plaintiff argues (with no citation to the record) that Unum secretly denied his claim based on a lack of "objective evidence." *Id.* The fact is, as explained in Unum's denial letter, uphold letter, and this brief, that Plaintiff's claim was denied

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 15
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

because the record as a whole failed to support his claim. *See* AR717; AR359.

To advance his red herring argument, Plaintiff mischaracterizes Unum's position as: "Waldron and his treatment providers have not provided objective evidence in the form of diagnostic findings or imaging findings to support his symptoms." Dkt. 15 at 17. But Unum clearly articulated its actual position: Plaintiff's "reported symptoms [were] inconsistent with and out of proportion to his extensive diagnostics, exam findings by multiple providers, as well as the initial insult…". AR669.

Regardless of whether it is characterized as objective or subjective, the medical evidence as a whole – including the opinion of his PCP – simply does not show that Plaintiff was unable to perform the **material duties** of his **regular occupation**. There was nothing improper about Unum's denial given the actual substance of the Administrative Record.

2. **The declarations submitted by Waldron and his mother do not outweigh the medical evidence.**

Plaintiff's second argument is that the declarations provided by Plaintiff and mother regarding his symptoms meet his burden of proof. *See* Dkt. 15 at 19. This argument is based on the false premise that the declarations "are consistent with contemporaneous medical evidence." *Id.* They are not. The fact is that Plaintiff and his mother believe that his symptoms prevent him from working, but none of the many providers who treated him during the **elimination period** agree.

As this Court has held, "Subjective or conclusory opinions regarding a claimant's work functionality will not suffice to carry Plaintiff's burden of proof." *Louis*, 2020 WL 39145 at *8. Furthermore, Plaintiff and his mother's "'subjective evidence is persuasive only to the extent it is corroborated by other evidence of medically documented impairments showing that she has functional limitations or restrictions that render her disabled from working.'" *Id.*; *see also Page v. Life Ins. Co. of N. Am.*, 305 Fed. Appx. 318, 319 (9th Cir. 2008) (the district court did not err in giving little weight to he claimant's self-reported symptoms where the subjective complaints were "inconsistent" and "lack[ed] credibility" and where the medical records "contained only

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 16
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

minor objective findings") (quotations omitted)). Just as in *Louis* and *Page*, Plaintiff and his mother's opinions are not persuasive because they are inconsistent with the medical evidence.

      3.      **Plaintiff May Not Incorporate His Prior Counsel's Arguments By Reference.**

Finally, Plaintiff's Motion purports to incorporate by reference the legal arguments made by Plaintiff's prior counsel is support of his appeal. *See* Dkt. 15 at 15-16. These arguments were asserted in a 30-page letter dated February 27, 2023 (AR1043) and a 15-page letter dated May 4, 2023 (AR3577). However, Plaintiff cannot incorporate these arguments by reference because doing so would dramatically exceed the page limits provided by the Local Civil Rules. *See, e.g., Russell v. WADOT Capital, Inc.*, Case No. C22-0531JLR, 2024 WL 2091770 (May 7, 2024) at *2, n. 1 ("The court will not consider arguments that Mr. Russell purports to 'incorporate by reference' from Ms. Russell's prior filings because incorporation of those filings would result in a brief that far exceeds the page limit set in this order."); *Gould v. Allstate Vehicle & Prop. Ins. Co.*, Case No. 2:22-cv-00820-LK, 2023 WL 3018865 (April 20, 2023) at *13 ("Allowing such incorporation would circumvent the length limit in Local Civil Rule 7(e)(4), so the Court does not consider the arguments in Allstate's separate filings in evaluating the Goulds' second motion to compel.")

## IV.    CONCLUSION

Because Plaintiff has failed to meet his burden of proving that he was unable to perform the **material** duties of his **regular occupation** during the **elimination** period, Unum respectfully requests that the Court enter judgment in its favor pursuant to Rule 52.

DATED: December 5, 2024

JENSEN MORSE BAKER PLLC

By *s/ Gabriel Baker*
    Gabriel Baker, WSBA No. 28473
    Gabe.baker@jmblawyers.com

    520 Pike Street; Suite 2375
    Seattle, WA 98101

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 17
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Tel. 206.682.1550

Attorneys for Defendant Unum Life Insurance Company of America

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 18
3:24-cv-05193-TMC

**JENSEN MORSE BAKER PLLC**
520 P</span>IKE S<span>TREET; S</span>UITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

# CERTIFICATE OF SERVICE

Pursuant to RCW 9A.72.085, the undersigned certifies, under penalty of perjury under the laws of the United States of America and the State of Washington, that on the 5th day of December, 2024, the document attached hereto was delivered to the below counsel in the manner indicated.

| | |
|---|---|
| *Counsel for Plaintiff*<br><br>Jay C. Kinney, WSBA No. 14053<br>Kinney Law Group<br>200 Winslow Way W; Suite 300<br>Bainbridge Island, WA 98110<br>kinney@kinneylawgroup.com | ☑ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| *Counsel for Plaintiff*<br><br>Glenn R. Kantor, CA Bar No. 122643<br>Brent Dorian Brehm, CA Bar No. 248983<br>Kantor & Kantor<br>9301 Corbin Avenue; Suite 1400<br>Northridge, CA 91324<br>Bbrehm@kantorlaw.net<br>gkantor@kantorlaw.net<br><br>*Admitted Pro Hac Vice* | ☑ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |

DATED this 5th day of December, 2024, in Kansas City, MO.

By *s/Gwendolyn M. Wall*
Gwendolyn M. Wall, paralegal

UNUM'S RULE 52 OPPOSITION AND CROSS-MOTION - 19
3:24-cv-05193-TMC

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550