THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RYAN WALDRON,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>　　　　Defendant. | Civil No. 3:24-cv-05193-TMC<br><br>**PLAINTIFF'S OPPOSITION TO UNUM'S CROSS-MOTION FOR JUDGMENT ON THE RECORD PURSUANT TO RULE 52 AND REPLY** |

PLAINTIFF'S OPPOSITION AND REPLY BRIEF
Case No.: 3:24-cv-05193-TMC

Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

I.   INTRODUCTION

This case exposes a glaring disconnect between Unum's actions as a fiduciary and its subsequent arguments in litigation. Unum's own records, along with comprehensive medical evidence from multiple specialists, demonstrate that Waldron was disabled during the elimination period. Yet, in Court, Unum seeks to rewrite history, relying on unsupported assertions and post hoc rationalizations that contradict both the evidence and its earlier determinations. This brief shines a light on Unum's claims, highlighting the factual inaccuracies, procedural violations, and unreasonable decision-making that compel the reinstatement of Mr. Waldron's disability benefits.

II.  UNUM IS WRONG ON THE FACTS

   A.   Both Unum and Waldron's Medical Providers Found Him Disabled During the Elimination Period

In litigation, Unum's main contention is that Waldron did not provide medical evidence establishing it was more likely than not that he was disabled during the elimination period. Unum bases this argument on repeated assertions in the style of "none of [Waldron's] treating providers believed that his symptoms prevented him from working" [Dkt. No. 16 at 8:14-15] and "[t]here is simply no contemporaneous medical evidence supporting Plaintiff's belief that he was unable to work during the elimination period of May to November 2021." [*Id.* at 13:24-25 (emphasis omitted)]. Unum goes so far as to assert that "the unanimous opinion of Plaintiff's own treating physicians" was that Waldron was not disabled. [*Id.* at 12:2-3]. Is that true?

From the outset, it is important to note that Unum's trial brief conflicts with Unum's findings when it was a fiduciary administering Waldron's short term disability (STD) and long term disability (LTD) benefits. Later in this brief, Waldron explains in detail why this precludes Unum from advancing these new assertions in litigation. Here, he deals with the facts.

The fact is that Unum found Waldron disabled and approved STD benefits through November 9, 2021. (717). While Unum claimed there are "some differences" in the terms and provisions of the STD and LTD plans, Unum never explained what those differences were or why

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
1
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

they were relevant. (59). Unum's own approval of STD benefits from May to November 2021 support Waldron's disability during the elimination period.

Prior to litigation, Unum recognized Waldron was disabled under the LTD plan until October 25, 2021. Unum denied Waldron's LTD benefits because "[w]e find you *no longer* met the definition of disability after October 25, 2021. Since your disability *ended* before your elimination period would have ended on November 09, 2021, you did not satisfy your elimination period." (720) (emphasis added). After Waldron appealed, Unum's conclusion was "[a]s of October 25, 2021, the evaluations and test results noted no significant physical, diagnostic, or imaging findings to explain his symptoms. The medical records did not document physical, diagnostic, imaging, or cognitive findings that would limit Mr. Waldron from performing the material and substantial duties of his regular occupation on a full-time basis as of October 25, 2021…." (3605).

It is a fact that Unum found Waldron disabled through October 25, 2021 under the LTD plan and through November 9, 2021 under the STD plan. Assertions to the contrary cannot be advanced by Unum or adopted by the Court.[1]

But what does the underlying evidence show? Prior to litigation, Unum acknowledged that Waldron's treatment providers believed he was unable to work. According to Unum:

> Paul Surrette [sic] advised that you were seeing multiple specialists for an extensive workup to treat your symptoms as well as headache, vision disturbance, and sleep disruption. *He advised you were unable to work from May 3, 2021 through May 2, 2022.* In the January 06, 2022 office visit with Dr. Murinova, she stated that you feel not only *severe disabling pain*, but you are also *unable to function due to headaches*. (718) (emphasis added).

Unum was correct about this. On December 1, 2021, PA Surette stated that Waldron would be incapacitated from May 3, 2021 to May 2, 2022. (94). This was due to an "illness." (95). PA Surette explained that for Waldron, "shortness of breath and fatigue limit even minimal activities of daily living." (95). When asked when Waldron was expected to return to work, PA Surette responded, "pending current workup with multiple specialists." (95). The medical facts supporting

---

[1] *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1185-89 (9th Cir. 2022).

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
2
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

Waldron's disability were "severe fatigue and shortness of breath following COVID-19 vaccination on 5/2/21. Has had extensive workup with multiple specialists for ongoing symptoms as well as headache, vision disturbance, and sleep disruption." (94).

PA Surette made these statements well after October 25, 2021. He even certified that they were "complete and true to the best of my knowledge and medical expertise." (94).

This was not the only time PA Surette assessed Waldron's functional capacity after October 25, 2021. In a form PA Surette completed on December 12, 2021, he confirmed that Waldron was unable to work from May 3, 2021 through "pending current + upcoming workup." (3273). In response to the question, "If accommodations are feasible, do you support your patient's return to work at this time?" he marked, "No" and explained "pending multiple specialist eval he may be able to return on intermittent basis in near future." (3274). In his own handwriting, PA Surette wrote "5/2/2022" next to the statement "Estimated date for return to work:". (3274).

When PA Surette signed this form, he did so under the admonition: "FRAUD NOTICE: Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties." (3273).

Unum was also right about the opinion of Dr. Natalia Murinova. As the Director of the University of Washinton School of Medicine's Headache Center, a Clinical Assistant Professor in the school's Department of Neurology, and being board-certified in headache medicine, Dr. Murinova was abundantly qualified to assess Waldron's headaches. (1064). In her treatment notes from January 6, 2022, Dr. Murinova documented that Waldron's headaches started to become a problem on May 2, 2021, were uncontrolled, and increased to "severe headache" 10 days per month. (1149-50). After her examination, Dr. Murinova diagnosed Waldron with "complicated diagnosis of (G44.52) NDPH (new daily persistent headache)" and stated, "Patient feels not only severe disabling pain, but is also unable to function due to headaches." (1154).

Consistent with an inability to perform the duties of his regular occupation, during the elimination period, Dr. Melanie Swift stressed to Waldron that he should only engage in regular activity "that does not cause a prolonged flare of fatigue and other symptoms. PT instructed to start with very minimal activity, like walking around the home and minimal household chores…."

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
3
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

1  (284). In litigation, Unum attempts to downplay the significance of a doctor telling their patient to
2  *start* by walking around the house. Unum offers a red herring, claiming Waldron did not follow
3  Dr. Swift's recommended that he consult with his local treatment providers about restrictions.
4  [Dkt. No. 16 at 12:22-26]. However, Dr. Swift made this suggestion in the future tense: "when he
5  is able to begin the process of returning to work." (284).

6        In litigation, Unum also makes the inaccurate assertion that Waldron submitted two
7  disability certifications from Drs. David Palacios and Glen Zielinski. [Dkt. No. 16 at 9:6-8].
8  However, both forms were completed by Dr. Palacios on August 10, 2022. (941-42). Dr. Zielinski
9  was listed on one of the forms as an additional treatment provider. (941). More important than this
10 careless mistake is Unum's repeated claim, made for the first time in litigation, that Dr. Palacio
11 certified Waldron was unable to work as of May 2, 2022, rather than during the elimination
12 period. [Dkt. No. 16 at 9:9, 9:21-22, 14:11-13].

13       Unum's argument is confusing because, prior to litigation, Unum was singing a different
14 tune: "On 8/10/22, Dr. Palacios completed a Unum form noting the insured was out of work from
15 5/2/21 to undetermined." (3517). And that was true:

16 
17     4. What dates are your patient unable to work? Beginning 5/2/21 with expected return to work date unknown

18 (3276). Unfortunately, there is another example of Unum making incorrect factual assertions to
19 support its narrative.

20       Unum claimed that Dr. Megan Callahan, who performed a neuropsychological evaluation
21 of Waldron, "did not express any opinion regarding Mr. Waldron's ability to return to work" [Dkt.
22 No. 16 at 9:25-26] and "did not express any opinion regarding when Plaintiff's disorders began or
23 whether the [sic] prevented him from working." [*Id.* at 14:17-18]. However, in Waldron's appeal
24 letter, he quoted—in bold—from Dr. Callahan's report: "**Until these symptoms are resolved**
25 **and/or better managed, it will be very difficult and unreasonable for him to return to work,**
26 **especially the highly demanding and fast-paced environment he was accustomed to at**
27 **baseline.**" (1057) (emphasis in original). The quote is accurate. (3027).

28       Unum's assertions do not withstand examination.

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
4
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

B.  **PA Surette Did Not Withdraw His Disability Certifications.**

Unum spends a good deal of its brief puffing up the significance of a single checkmark made by PA Surette on February 20, 2022. (689). Unum spends zero time evaluating if that checkmark was accurate or mistaken. After all, if a single three letter word is overlooked, suddenly the PA Surette's response makes complete sense. Accepting it at face value, as Unum does, PA Surette's response conflicts with every other piece of information we have from him—including his treatment notes from February 15, 2022. Let's examine.

To start, there is no support for Unum's assertion that "Mr. Surette withdrew his initial certification after further consideration." [Dkt. No. 16 at 13:7]. It is not disputed that PA Surette marked "YES" on Unum's letter. Here it is:

- Are you in agreement that the medical evidence does not support that Ryan Waldron was/is precluded from 10/25/21 forward from performing sustained full-time (forty hours per week) activities which include: Exerting up to 20 lbs occasionally; frequent sitting; occasional walking, standing, reaching, handling, fingering, keyboard use. Mental/cognitive demands include: directing, controlling or planning activities for others; influencing people in their opinions, attitudes and judgments; performing a variety of duties; attaining precise set limits, tolerances and standards; dealing with people; making judgments and decisions.


  X  YES          ____ NO

- occasional (defined as from 0-2.5 hours in an 8-hour day); frequent (defined as from 2.5-5.5 hours in an 8-hour day); constant (defined as from 5.5-8 hours in an 8-hour day)

(689). Nowhere does PA Surette state he is "withdrawing" anything. In fact, PA Surette's prior assessments and treatment are not found in the entire letter. There is nothing indicating PA Surette withdrew his prior certifications or gave them further consideration.

As discussed in the prior section, *after* October 25, 2021, on two different occasions, PA Surette certified that Waldron was disabled. (94-95, 3273-74). Those certifications were not one checkmark certifications. Each spanned two pages and contained responses fully consistent with Waldron's treatment notes from PA Surette and Waldron's other treatment providers (including

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
5
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

his physical therapy notes). Both contained fraud notices. One contained an express certification of accuracy.

In PA Surette's treatment notes from December 7, 2021, he wrote, "patient seems to be improving with regards to symptoms, however still significant disability from postviral or postvaccine syndrome." (752). It would be odd for PA Surette write that Waldron was *still* significantly disabled if Waldron had been able to work since October 25, 2021.

On January 13, 2022, PA Surette examined Waldron and stated Waldron "is still plagued by fatigue and dizziness…." (3037). Again, it would be very odd for PA Surette to use the term *still plagued* by fatigue and dizziness if, in fact, Waldron's symptoms had resolved as of October 25, 2021.

On February 15, 2022, five days before he made the above mark, PA Surette treated Waldron for chronic fatigue. During that visit, Waldron reported that he had been ill with COVID two weeks prior. Afterwards, Waldron "actually had significant improvement in his chronic fatigue" over the prior five days, but he "still has low stamina and feels like muscles tire out very quickly throughout his body." (3034). PA Surette was hopeful that Waldron would be able to return to higher degree of participation in normal day-to-day activities. (3035). It is difficult to reconcile PA Surette saying Waldron *still* has low stamina if Waldron's symptoms had resolved as of October 25, 2021. If Waldron was able to work at his physically and mentally demanding job, it does not make sense for PA Surette to be hopeful about a future where Waldron was able to return to normal day-to-day activities.

Against this backdrop, it is more likely than not that PA Surette was not withdrawing his prior disability certifications upon further review. PA Surette may have been indicating his agreement that diagnostic testing did not support Waldron's disability. Perhaps PA Surette overlooked the word "not" in Unum's letter and believed he was confirming that Waldron was precluded from work. Perhaps PA Surette knew that Waldron's occupation was more physically demanding than what Unum was attempting to ask about (more on that later). Perhaps PA Surette misunderstood how Unum would interpret his response because the prompt he responded to did not mention work or Waldron's own occupation, asking only about "activities." (689).

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
6
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

Unfortunately, Waldron was not able to ask PA Surette about his seemingly inconsistent answer. Contrary to Unum's claim that it gave Waldron "every opportunity" to provide information supporting his disability claim, Unum did not give Waldron a copy of PA Surette's answer until after it denied his benefits. [Dkt. No. 16 at 7:20-22].

In August of 2022, Waldron noted that he had come across PA Surette's letter while reviewing Unum's disability claim denial file. The letter surprised Waldron because it was inconsistent with PA Surette's prior statements. Waldron attempted to confirm if PA Surette's intention was to answer the form the way he did. (3264). However, PA Surette had left Tumwater Family Practice by that time. (834).

PA Surette did not withdraw his disability certifications. Beyond this, Waldron notes that the single checkmark was inconsistent with all of PA Surette's treatment records and two prior, well supported, disability certifications. Considering all the evidence, it is more likely than not that PA Surette believed Waldron was "still significant disability from postviral or postvaccine syndrome" after October 25, 2021. (752).

### III.   UNUM'S ARGUMENTS ARE WRONG

Unum makes three affirmative arguments: (1) Waldron cannot show he was unable to perform the material duties of his regular occupation during the elimination period, (2) evidence regarding Waldon's capabilities after the elimination period are irrelevant, and (3) Waldron did not meet his burden of proving that he was unable to work on a part-time basis.

#### A.   Unum's inability to administer Waldron's claim based on facts

Unum supports the first argument regarding Waldron's inability to perform the material duties of his regular occupation with two factual assertions: that there is no evidence during the elimination period supporting Waldron's disability and that NP Surette withdrew his disability certification. Above, Waldron explained why both claims are factually incorrect.

Unum raising the issue of the material duties of Waldron's regular occupation is interesting because the record shows that Unum failed to evaluate the material duties of Waldron's occupation as required by the LTD Plan. (135). Why? Because Unum's decision to deny benefits

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC

7

Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

was based on a list of generic occupational demands. (718). Moreover, Unum's generic list was not even accurate.

On appeal, Unum admitted the initial list of generic occupational demands misstated the walking and standing requirements of Waldron's occupation (which required the ability to walk 80% of the day). Additionally, Waldron's occupation required working 60-70 hours a week, so Unum admitted that it had failed to include the need to work "over 40 hours per week" in its prior assessment. (3504, 3598). Despite this, Unum failed to inform Dr. Steven Winkel that a material aspect of Waldron's regular occupation was the ability to work over 40 hours per week. (3512). Similarly, Unum did not include this occupational requirement when assessing Waldron's ability to perform his regular occupation on appeal. (3599). Thus, not only did Unum improperly use generic occupational demands, but Unum also failed to assess Waldron's ability to work 60-70 hours a week as required by the Plan.

This is critical because claims must be administered according to the plan's definitions.[2] By assessing Waldron's capacity to perform generic occupational demands rather than the specific duties of his job as it is normally performed, Unum failed to fully apply the standard of disability articulated in the Plan. Unum's conclusion that Waldron was not disabled under the Plan did not take into consideration whether he was unable to perform "the material and substantial duties of your regular occupation…." (118). Because it is well-established that insurers must consider the insured's actual job requirements, and Unum failed to do this, Unum's claim decision was unreasonable.[3]

Unum's second argument fails for a similar reason as the first. Unum's second argument is based on the premise that none of the treatment providers Waldron saw after the elimination period found Waldron disabled during the elimination period. As explained above, this is not true. Dr. Palacios certified Waldron's disability during the elimination period. (3517).

---

[2] *Radmilovich v. Unum Life Ins. Co. of Am.*, 701 F. Supp. 3d 984, 998 (C.D. Cal. 2023).
[3] *Id.* at 998-99.

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
8
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

**B.     Unum may not present new rationale to the Court that were not presented to Waldron as a specific reason for denying benefits during the administrative process**

Unum did not rely upon the plan's part-time basis provision when administering Waldron's claim. As a result, the Court must reject Unum's attempt to undermine ERISA and ignore this argument.[4]

It is well-established that ERISA administrators, like Unum, cannot introduce new reasons for denying benefits during litigation. Courts require administrators to base their denial decisions on the reasons provided during the administrative review process, prohibiting them from asserting new grounds for denial that were not previously raised. This ensures that claimants have a fair opportunity to respond to the rationale provided and aligns with ERISA's purpose of ensuring full and fair review of claims.

In *Collier v. Lincoln Life Assurance Co. of Boston*, the Ninth Circuit explained that ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits. One way ERISA does this is by regulating the way plans process benefits claims. ERISA sets minimum requirements when a plan administrator denies a claim for benefits.[5]

By statute, plan administrators must provide adequate notice to any claimant whose claim for benefits has been denied. When a plan administrator denies a claim for disability benefits, the administrator must provide "an explanation of the basis for disagreeing with or not following" the conclusions of the claimant's health care professionals.[6]

Upon denial of a claim for benefits, the claimant must be provided an opportunity for a "full and fair review" of the denial of benefits.[7] This process is generally referred to as an "appeal" or "administrative appeal." A claimant will not be deemed to have received the required

---

[4] *Collier,* 53 F.4th at 1185-89.

[5] *Id.* at 1185.

[6] 29 C.F.R. § 2560.503–1(g)(1)(vii)(A)(i).

[7] 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503–1(h)(4).

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
9
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

full and fair review unless the claimant is given the opportunity to respond to the specific reasons for the denial.[8] Thus, if a plan administrator relies on a new or additional rationale during the appeal process, the administrator must provide the rationale to the claimant and "give claimant a reasonable opportunity to respond."[9] If the plan administrator denies the appeal, the claimant may then seek relief in federal court to recover benefits due to the claimant under the terms of the plan, to enforce the claimant's rights under the terms of the plan, or to clarify the claimant's rights to future benefits under the terms of the plan.[10]

The administrative process is procedurally robust for good reason: ERISA is designed to provide safeguards to protect the interests of employees and their beneficiaries.[11] The Ninth Circuit has repeatedly stressed that ERISA is remedial legislation that should be construed liberally to protect claimants.[12]

A plan administrator undermines ERISA and its implementing regulations when it presents a new rationale to the district court that was not presented to the claimant as a specific reason for denying benefits during the administrative process.[13] This is not a new or novel concept. The Ninth Circuit alone has issued at least six published decisions in the last 15 years explaining this rule.[14] The Ninth Circuit made clear that a district court commits clear error by adopting newly presented rationale when applying de novo review.[15]

---

[8] 29 C.F.R. § 2560.503–1(h)(2)(ii).

[9] 29 C.F.R. § 2560.503–1(h)(4)(ii).

[10] ERISA § 502(a)(1)(B); 29 U.S.C. § 1332(a)(1)(B).

[11] 29 U.S.C. § 1001(a).

[12] *Collier*, 53 F.4th at 1185-86.

[13] *Collier*, 53 F.4th at 1186 (citing 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503–1(g)(1)(i), (j)(1); *Harlick v. Blue Shield of California*, 686 F.3d 699, 719-21 (9th Cir. 2012); *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 906 (9th Cir. 2016)).

[14] *Collier*, 53 F.4th at 1185-89; *Wolf v. Life Insurance Company of North America.* 46 F.4th 979, 987 (9th Cir. 2022); *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 440–42 (9th Cir. 2020); *Demer*, 835 F.3d at 906; *Harlick*, 686 F.3d at 719-21; *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010).

[15] *Collier*, 53 F.4th at 1188.

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
10
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

When a district court conducts a de novo review of a benefits denial, it evaluates the plan administrator's reasons for denying benefits without giving deference to its conclusions or opinions.[16] For example, the Court has no reason to make a credibility determination if the denial was not based on such an assessment. The same is true for any reason to deny benefits that the claimant was not given a reasonable opportunity to respond to during the administrative process.[17]

In Waldron's case, Unum did not argue during the administrative review process that his eligibility for benefits ended because he was able to work in his regular occupation on a part-time basis and did not. As a result, Unum is barred from asserting this argument in litigation.

### C. Unum misses the point in addressing Waldron's arguments

Unum argues that Waldron's "objective evidence" argument is a classic red herring. Ironically, Unum's response is the red herring. Waldron's argument was that his self-reported symptoms, when combined with his treatment history, work history, treatment specialist's statements, and test results were sufficient to meet his burden of proof. Waldron's point was that credible evidence of Waldron's symptoms, based on his own reports and the medical reports of examining physicians is more than sufficient to establish disability.[18] The severity of symptoms, so long as they are consistent with and supported by the other evidence, will, of necessity, be established by self-reported symptoms and physical complaints.[19] It is sufficient that the preponderance of the evidence suggests that Waldron's subjective complaints derive from his medical conditions and the symptoms associated with those conditions.[20]

---

[16] *Id.*

[17] *See* 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503–1(g)(1)(i), (h)(ii)(4)(ii), (j)(1); *Collier*, 53 F.4th at 1188.

[18] *Demer*, 835 F.3d at 905-06; *Marcus*, 615 F.2d at 27; s*ee also*, *Palmer*, 994 F. Supp. at 1233-1234.

[19] *E.g. Hawkins*, 326 F.3d at 919; *Diaz*, 499 F.3d at 645-6; *Bledsoe v. Metro. Life Ins.*, 90 F. Supp. 3d 901, 913 (C.D. Cal. 2015); *Gallegos v. Prudential Ins. Co. of Am.*, 2017 WL 2418008 at *9-11 (N.D. Cal. June 5, 2017); *Leetzow v. Metro. Life Ins. Co.*, 2016 WL 7324092 at *9 (C.D. Cal. Dec. 5, 2016); *Jahn-Derian v. Metro. Life Ins. Co.*, 2016 WL 1355625 at *7 (C.D. Cal. Mar. 31, 2016).

[20] *Bledsoe*, 90 F. Supp. 3d at 913; *Gallegos*, 2017 WL 2418008 at *9-11.

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
11
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

Herein, there can be no meaningful dispute that the pain, fatigue, and brain fog Waldron reported was legitimate. When Waldron began to experience these symptoms, he sought extensive treatment to find a cure. There is no evidence he was fabricating or exaggerating his symptoms to facilitate a disability claim. Like with all claims based on subjective symptoms, the lack of objective evidence alone was not a valid basis for denying Waldron's benefits.[21] Unum offered no response to this.

Similarly, Unum argues that the declarations submitted by Waldron and his mother do not outweigh the medical evidence. But this was not Waldron's argument. He asserted that Unum had not considered these declarations in performing its evaluation (they are not referenced by Dr. Winkle or in Unum's decision letter). Because of this, he asked the Court to consider the sworn declarations as part of its evaluation of all the evidence.

Finally, Unum argues that Waldron purported to incorporate by reference the legal arguments made by prior counsel. Again, Unum misses the point. What Waldron incorporated by reference was information in the record, not prior pleadings. This does not result in circumventing page limits because the Court must consider the entire 4,776 pages record anyways and Unum had the opportunity to respond to this information during the administrative process. Just as Unum did during the administrative process, Unum chose not to address Waldron's arguments in litigation.

## IV.   CONCLUSION

Waldron asks the Court to find he met his burden of proof regarding disability and reinstate his benefits under both the LTD and LI Plans.

Dated this 9th day of January, 2025

        MONAHAN TUCKER LAW

        BY: s/Stacy Monahan Tucker
        Stacy Monahan Tucker
        WSBA 43449

---

[21] *Young v. Sun Life and Health Ins. Co.*, 285 F. Supp. 3d 1109, 1134-35 (E.D. Cal. 2018); *Jahn-Derian*, 2016 WL 1355625 at *7.

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
12
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525

Monahan Tucker Law
14241 Woodinville-Duvall Road, Suite 382
Woodinville, WA 98072
E-mail: smtucker@mtlawpc.com
Telephone: (206) 486-3553
Facsimile: (206) 800-7801


KANTOR & KANTOR, LLP

By: */s/ Brent Dorian Brehm*
Brent Dorian Brehm
(Admitted pro hac vice)
KANTOR & KANTOR LLP
9301 Corbin Ave. Suite 1400
Northridge, CA 91324
E-mail: bbrehm@kantorlaw.net
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Attorneys for Plaintiff,
RYAN WALDRON


### *Local Civil Rule 7(e)(6) Certification*

I certify that this memorandum contains no more than 4083 words, including footnotes, in compliance with Local Civil Rules.

*/s/ Brent Dorian Brehm*
Brent Dorian Brehm

PLAINTIFF'S RULE 52 OPENING TRIAL BRIEF
Case No.: 3:24-cv-05193-TMC
13
Kantor & Kantor, LLP
9301 Corbin Ave., Suite 1400
Northridge, CA 91324
(818) 886-2525